COLUMBUS MILLS, INC.,
Plaintiff–Appellee,

v.

Doy L. FREELAND,
Defendant–Appellant,

Raymond R. Lyon, and Margaret F.
Lyon, Defendants.

No. 89–9039.

United States Court of Appeals,
Eleventh Circuit.

Dec. 14, 1990.

James L. Paul and Russell R. Grosse, Gambrell, Clarke, Anderson & Stolz, Atlanta, Ga., for defendant-appellant.

Nolan C. Leake, J. Frank Castle, King & Spalding, Atlanta, Ga., and Richard Y. Bradley, Columbus, Ga., for plaintiff-appellee.

**1576**

Before FAY and JOHNSON, Circuit Judges, and ALLGOOD,* Senior District Judge.

JOHNSON, Circuit Judge:

This case arises on an appeal following a final judgment and an award of attorneys' fees. The appellant, Dr. Freeland, was the defendant in the action below. He complains of being denied a jury trial on the question of attorneys' fees, of the district court's findings of facts, and of the jury charge.

## I. STATEMENT OF THE CASE

### A. *Factual Background*

George W. Swift and his family owned the Carpet Mill Store, Inc. and 60–65% of the outstanding shares of Columbus Mills, Inc. In October of 1986, Mr. Swift decided to merge the two corporations and then take the resulting corporation private. Mr. Swift and his lawyer met sometime in early November of 1986 with representatives of the brokerage firm of Robinson–Humphrey. During this meeting, Mr. Swift decided to offer 42 dollars per share for all the outstanding shares of Columbus Mills. Following this meeting, financing was arranged.

On November 4, 1986, Mr. Swift announced to Columbus Mills' board of directors that he proposed to make a tender offer at 42 dollars per share. The board of directors appointed a "fairness committee" to evaluate the offer. This committee then hired legal counsel and the investment firm of Dean Witter to evaluate the offer.

The committee met with the full board of directors on November 13, 1986. The committee reported to the board that it determined that the price of 42 dollars was fair. At the same meeting, the board of directors voted to accept the opinion of Dean Witter and to approve the tender offer. On November 20, 1986, Swift mailed the 42 dollar tender offer to all shareholders.

One of the institutional investors, First Wisconsin Asset Management, demanded 43 dollars a share for its block of stock. In response to this demand, Mr. Swift amended his tender offer, promising all the shareholders 43 dollars a share.

The tender offer expired on the last business day of 1986. When the offer expired, ninety percent of all shares had been tendered and Mr. Swift was able to force a merger on December 30, 1986. Mr. Swift wrote a letter to the remaining stockholders informing them of his intention to take the new corporation private. He informed the stockholders that they could either tender their remaining shares at 43 dollars per share or they could dissent and demand payment of "fair value" pursuant to former Ga.Code Ann. § 14–2–214(b) (1983).

Only three shareholders elected to dissent. Of these three, one stockholder settled before trial. Another brought suit in state court and lost. *Columbus Mills, Inc. v. Kahn*, 259 Ga. 80, 377 S.E.2d 153 (1989) (stockholder failed to comply with statutory requirements for dissent). Dr. Freeland is the third dissenting stockholder.

Dr. Freeland is a private investor who has been managing his own investments for twenty years and his own pension plan for fifteen years. Dr. Freeland purchased stock in Columbus Mills in the early 1970s, and he claims to have studied the company's annual report over the fifteen years that he owned the stock. Dr. Freeland, furthermore, claims to spend over an hour a day managing his portfolio of stocks. Dr. Freeland knew that in the twelve months prior to the merger Columbus Mills stock was trading in the mid to low thirty dollar range, and that, with the exception of a brief spike of 49 dollars per share in the summer prior to the tender offer, the stock had never traded above 43 dollars a share.

Despite his knowledge of the trading range, Dr. Freeland felt that the tender offer should have been priced at 85 dollars a share. Dr. Freeland allegedly based this figure on his knowledge of the company and specifically on the new plant and equip-

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

ment, low debt-load, substantial excess cash, and the fact that it was being taken private without the company's soliciting third party offers. Furthermore, Dr. Freeland felt that the market in Columbus Mills stock was too "thinly" traded to be an adequate indicator of the true value of the company.

### B. *Procedural History*

The plaintiff/appellee Columbus Mills filed this statutory stock valuation suit in Georgia state court on March 25, 1987. The case was then removed to federal district court on the grounds of diversity of citizenship. The defendant, Dr. Freeland, made a demand for a jury trial. Columbus Mills opposed this motion. The district court granted the request for a jury trial. However, during a later unrecorded pre-trial conference, the district court modified its earlier order and decided that the question of attorneys' fees should be tried solely by the court.

The jury trial on the stock valuation question was held on September 26th through 29th of 1988. Following the instructions to the jury, Columbus Mills requested a supplemental charge that the jury could discount the value of the shares because they were a minority interest and investors would not pay a premium on a minority interest. The district court gave this instruction over Dr. Freeland's objection. The district court denied Dr. Freeland's request that it instruct the jury about corporate obligations of good faith and fiduciary duties towards minority shareholders.

The jury concluded that the stock should have been valued at 43 dollars a share and therefore it deemed Mr. Swift's tender offer fair.

On October 21, 1988, Columbus Mills filed a motion for an award of fees and expenses pursuant to former Ga.Code Ann. § 14-2-251(g) (1983). On November 7, 1988, Dr. Freeland filed a brief in opposition and requested an evidentiary hearing.

Following the hearing on January 23, 1989, the district court found that Dr. Freeland's refusal to accept the tender offer was "arbitrary, vexatious, or otherwise not in good faith." The court held that Dr. Freeland was not entitled to interest on his non-tendered shares. Moreover, the court concluded that Columbus Mills was entitled to reasonable costs and expenses for bringing this action. After another round of affidavits and motions, the district court awarded Columbus Mills all of its attorneys' fees and expenses (with the exception of the fees for one expert who did not testify at trial). The total award was $179,624.84.

### II. ANALYSIS

A. *Did the District Court Err in Bifurcating the Case and Trying the Issue of Attorneys' Fees Without a Jury?*

Dr. Freeland complains that the district court violated his Seventh Amendment right to have a jury decide whether he acted arbitrarily and whether Columbus Mills was entitled to attorneys' fees.

■ At the outset, we make some basic observations. It is beyond dispute that in this diversity action, the substantive law to be applied is the corporate law of Georgia, while federal law governs the procedure. *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, Georgia law controls both the questions of the availability of attorneys' fees and the standards to determine when the attorneys' fees should be awarded.[1] The Supreme Court, however, has held that federal law governs the right to a jury trial in federal courts in diversity actions. *Simler v. Conner*, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) (per curiam). The court in *Simler* extolled the virtues of the federal courts' applying one uniform law which governs whether there is a right to a jury

1. Georgia law states that should the court find that a shareholder's refusal to accept the corporation's offer was arbitrary, vexatious or otherwise not in good faith, then the court may refuse to award the shareholder's interest and the court may assess the corporation's attorney's fees and expenses against the shareholder. Ga. Code Ann. § 14-2-251(g)(7) (1983).

**1578**

trial. *Id.* at 222, 83 S.Ct. at 610. The court implicitly rejected the idea of applying state law as a rule of decision.

█ We therefore now turn to federal law to determine if the district court unconstitutionally deprived Dr. Freeland of his right to a jury trial. This Court has held that there is no constitutional right to have a jury decide whether or not to award attorneys' fees.[2] *See Empire State Insurance Co. v. Chafetz*, 302 F.2d 828 (5th Cir.1962); *see also Spach v. Monarch Insurance Co.*, 309 F.2d 949 (5th Cir.1962). The *Chafetz* court correctly compared the fee-shifting statute at issue with the common-law causes of action available when the Seventh Amendment was adopted. *Chafetz*, 302 F.2d at 1102. The court then compared the statute with pre-merger equity and common-law causes of action and it decided the statute did not resemble a common-law cause of action. *Id.* Since *Chafetz* was decided on federal law grounds, it foreshadowed the later holding of *Simler v. Conner. Chafetz* also foreshadowed the Seventh Amendment analysis later adopted by *Pernell v. Southall Realty*, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974), and *Federal Dep. Ins. Corp. v. New London Enterp., Ltd.*, 619 F.2d 1099 (5th Cir. 1980). *Chafetz* is thus binding on this Court.[3]

We are unpersuaded by Dr. Freeland's argument that even if the attorneys' fees question was properly a question for the judge, the preliminary question of whether he acted "arbitrarily, vexatiously, or otherwise in bad faith" should have been submitted to the jury in the form of a special verdict.

We note that courts in a variety of contexts have held that the threshold question which triggers attorneys' fees is not a question for the jury. For example, the Ninth Circuit held that the Seventh Amendment was not implicated by 28 U.S.C.A. § 1927 (West Supp.1990) which allows the shifting of attorneys' fees for unreasonably and vexatiously multiplying the proceedings in any federal court. *In re Itel Securities Litigation*, 791 F.2d 672 (9th Cir.1986). This Court has held that a bench hearing is not always necessary before a court may shift attorneys' fees under Fed. R.Civ.P. 11. *Donaldson v. Clark*, 819 F.2d 1551, 1560–61 (11th Cir.1987). And, the Supreme Court has stated that "a request for attorneys' fees should not result in a second major litigation" when it held that the district court judge must, as a threshold matter, determine whether the plaintiffs are the prevailing parties in order for the plaintiffs to recover their attorneys' fees under 42 U.S.C.A. § 1988 (West 1981). *Hensley v. Eckerhart*, 461 U.S. 424, 433, 437, 103 S.Ct. 1933, 1939, 1941, 76 L.Ed.2d 40 (1983).[4]

By the necessary extension of this Court's precedent in *Chafetz* and by reference to the law developed under 28 U.S. C.A. § 1927, and 42 U.S.C.A. § 1988, as

**2.** This Court is aware of the series of Eleventh Circuit cases in which various district courts submitted the issue of whether to award attorneys' fees under Ga.Code Ann. § 13–6–11 to the jury. *See, e.g., ADP–Financial Computer Services, Inc. v. First National Bank of Cobb County*, 703 F.2d 1261 (11th Cir.1983); *Bigelow–Sanford, Inc. v. Gunny Corp.*, 649 F.2d 1060 (5th Cir. Unit B 1981); *Shingleton v. Armor Velvet Corp.*, 621 F.2d 180 (5th Cir.1980); *Fratelli Gardino v. Caribbean Lumber Co.*, 587 F.2d 204 (5th Cir.1979). In none of these cases did the district court decide the issue was a jury question on federal law grounds. Therefore, these cases do not overrule *Chafetz sub silentio.* Moreover, it appears that the district courts submitted the question to the jury on the basis of a state statute without explaining how this use of state law comports with *Simler v. Conner, supra.* It should be noted that none of these cases were

appealed to this Court on the grounds that the issue was not a jury question. This Court has therefore never ruled that this is a jury question under the Seventh Amendment.

**3.** The Eleventh Circuit, in the *en banc* decision of *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir.1981), adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.

**4.** This Court has in the past turned to section 1988 case law to guide the case law in other fee-shifting statutes. *See e.g., Rothenberg v. Security Management Co., Inc.*, 677 F.2d 64 (11th Cir.1982) (applying Section 1988 case law to attorney fees dispute under Georgia stockholder derivative action law); *Gordon v. Heimann*, 715 F.2d 531 (11th Cir.1983) (same in Federal RICO context).

well as under Rule 11, we hold that the decision of the district court judge to decide whether Dr. Freeland acted arbitrarily did not violate his Seventh Amendment rights.

### B. *Was Dr. Freeland's Decision to Dissent "Arbitrary, Vexatious, or Otherwise Not In Good Faith"*

■ The district court's finding of fact that Dr. Freeland acted in bad faith may be set aside only if it is clearly erroneous. *See Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318 (11th Cir.1989) (per curiam). That finding is not clearly erroneous.

The district court's factual analysis was guided both by statutory and by caselaw guidelines. The court specifically noted that the statute provided three guidelines:

(a) whether the fair value of the shares as determined materially exceeded the amount which the corporation offered to pay;

(b) whether an offer was made by the corporation; and

(c) whether the corporation failed to institute the special proceeding within the period specified by the statute.

Ga.Code Ann. § 14–2–251(g)(7)(A–C). The district court also noted that the Georgia courts had in the past looked to the New York courts' interpretation of the New York dissenters' rights statute, which was the model for the Georgia statute. *See Atlantic States Constr., Inc. v. Beavers,* 169 Ga.App. 584, 314 S.E.2d 245, 248–49 (1984). The New York courts had assessed attorneys' fees when there was "'no reasonable cause to believe that there can be a greater recovery than the amount offered by the corporation.' ... Whether a shareholder is assessed costs, then, is determined by the fairness and reasonableness of the corporation's offer." *Leighton v. American Tel. and Tel.,* 397 F.Supp. 133, 138 (S.D.N.Y.1975) (quoting *Application of Deutschmann,* 281 A.D. 14, 116 N.Y.S.2d 578, 585 (1952)).

With these considerations in mind, the district court analyzed several factors. The court noted that the corporation's offer was fair. It was fair because a special committee adjudged it fair. Dr. Freeland knew that the members of the committee were very knowledgeable about Columbus Mills and the carpet industry. Dr. Freeland also knew that one of the members of the committee owned 20,000 shares of stock, and that this member intended to tender the stock at 43 dollars. Furthermore, Dr. Freeland knew Dean Witter issued a fairness report and, while Dr. Freeland had no cause to doubt Dean Witter's impartiality, Dr. Freeland had refused to read the report. Dr. Freeland also knew that the stock had been trading in the mid-thirty dollar range for most of the prior year. The book value of the stock was only $17.85 at the time of the offer and at no time was more than a minority interest of the corporation available in outstanding stock. Investors are traditionally unwilling to pay a premium for the stock under such circumstances.

The district court also considered important the fact that Dr. Freeland had conducted little research before he chose to dissent. The court found that Dr. Freeland spoke with his accountant who made a few general statements, and then recommended that Dr. Freeland consult with an investment banker. Dr. Freeland also spoke with his lawyer. Evidently, the lawyer did not have an opinion on the fairness of the tender offer, but the lawyer did have an opinion on the strategic value of holding out and threatening a lawsuit. Dr. Freeland's lawyer counselled the doctor that it was likely the corporation would try to make a settlement offer. The court concluded based on these factors, and on Dr. Freeland's manner of testifying, that Dr. Freeland dissented not because he felt the offer was unfair, but because he felt he could use his dissent to achieve a substantial settlement.

Dr. Freeland has a different view of the facts than the court. Specifically, Dr. Freeland emphasizes his knowledge of investing and of the company. Dr. Freeland also notes that he was given only twenty days to dissent and that he did everything that a small investor could do within those twenty days to investigate the fairness of the offer. The twenty day period may in

fact have limited Dr. Freeland's ability to adequately investigate, but Dr. Freeland does not account for his actions during the year between his decision to dissent and the start of the trial.

### C. Did the District Court Err In Awarding All of the Attorneys' Fees

■■■ There is some dispute between the parties as to whether Columbus Mills was able to prove that its attorneys' fees were reasonable. The question of what quantum of evidence is sufficient to carry a burden of proof is a question of law, *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321 (11th Cir.1982), and is therefore reviewable *de novo*. *In re Sublett*, 895 F.2d 1381 (11th Cir.1990). This Court held in *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292 (11th Cir.1988), that at a minimum the party seeking attorneys' fees must produce "more than an affidavit from the attorney performing the work." *Id.* at 1299. The goal of the analysis is to replicate the rates that would prevail in the legal marketplace. *Id.* The Court in *Norman* specifically noted that details "such as similarity of skill, reputation, [and] experience" of the attorneys go to the weight of the evidence and not the question of the burden of proof. *Id.*

Columbus Mills produced more than an affidavit of the attorney who performed the work. Columbus Mills produced another affidavit which established that the rates were reasonable. While Dr. Freeland may have correctly pointed out various deficiencies in the affidavit, these deficiencies tend to go to the weight of the affidavit. Columbus Mills also paid its attorneys' fees throughout the litigation. Since the goal of the court in an attorneys' fees dispute is to have the awarded fees reflect prevailing market norms, evidence of a fee structure arrived at by private parties negotiating at arms length is highly persuasive.[5]

Dr. Freeland also claims that the number of hours billed should have been reduced by the district court. Dr. Freeland points out that Columbus Mills was completely unsuccessful in arguing two motions during pretrial hearings. Furthermore, two to three attorneys attended most depositions, and one junior attorney attended the entire trial but did not sit at the counsel's table. Dr. Freeland also points out that Columbus Mills established the reasonableness of the number of hours only through a short affidavit. Finally, Dr. Freeland complains that the attorneys' fees exceeded the amount in controversy by $18,000.

This Court in *Norman* explained that the test for the reasonableness of the number of hours is whether the attorney excluded " 'excessive, redundant or otherwise unnecessary' hours ... from the amount claimed." *Norman v. Housing Authority of Montgomery*, 836 F.2d at 1301 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). This Court stated that the purpose behind this test is to ensure "that a lawyer [is not] compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights." *Norman*, 836 F.2d at 1301. The *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours. *Id.* Applying *Norman*, we have examined the record and determined that the refusal of the district court to reduce Columbus Mills' hours was not an abuse of that court's discretion.

After determining the reasonable hourly rate and the reasonable number of hours, the district court was required to determine whether to adjust the so-called "lodestar" based on the attorney's performance. *Norman*, 836 F.2d at 1302. The Court did not adjust the fees upward or downward.

In *Norman*, the Court stated that the adjustment of the attorneys' fees was within the discretion of the district court. *Id.* at 1304. Columbus Mills' attorneys prevailed on virtually every issue before the court; accordingly the district court did not

---

**5.** It should be noted that there is no suggestion that the fees were set in bad faith with an eye toward the possibility of fee-shifting.

appear to abuse its discretion by not reducing the lodestar.[6]

### III. CONCLUSION

We therefore AFFIRM the district court.

---

**6.** Dr. Freeland also alleges the district court erred in giving a "minority interest" charge under *Atlantic State Constr., Inc. v. Beavers,* 169 Ga.App. 584, 314 S.E.2d 245, 251 (1984), and in not giving a charge of good faith and fair deal- ing. We have reviewed these alleged errors under the standards described in *Dempsey v. Mac Towing, Inc.,* 876 F.2d 1538, 1542 (11th Cir.1989), and we have concluded that there was no error.