228 P.2d 448

**THORNBURG v. ELGAS et al.**

No. 4937.

Supreme Court of Arizona.

March 12, 1951.

Paul M. Roca, of Phoenix, for appellant.

Snell & Wilmer, of Phoenix, for appellees

DE CONCINI, Justice.

Appellant Charles I. Thornburg, whom we shall hereinafter designate as plaintiff, filed his suit against defendants claiming damages on account of the alleged negligence of the defendants resulting in the death of his minor son, Charles W. Thornburg. After a jury trial, the lower court directed a verdict in favor of the defendant Louis Elgas and the jury returned a verdict in favor of the corporate defendant, Tempe Chamber of Commerce, which is hereinafter designated as defendant. Plaintiff's motion for a new trial having been denied, plaintiff appeals to this court from the judgment entered on the verdicts.

The evidence showed that Charles W. Thornburg, son of the plaintiff, hereinafter referred to as Thornburg, was at the Tempe Beach swimming pool on April 24, 1945. He was friendly with Charles Smith, the pool's lifeguard, and together with two girls they planned a double date that evening after the pool closed.

It was standard practice in April, 1945, to close the pool every evening at 7:00 p. m. and on the days when the pool was to be drained and refilled, to drain the water therefrom at that hour by raising the drainage valve in the pool. The pool is 175 feet long, 60 feet wide and 10 feet deep at the west or deep end. The pool's capacity when full was estimated at approximately 400,000 gallons. The mechanism for draining the pool consists of an 18-inch concrete pipe set in the bottom of the north wall at the deep end from whence the water drained into an outlet box in the picnic grounds lying north of the pool, thence into the Salt River. The pipe's opening into the pool was without grillwork or other protection and was closed by a "Snow alfalfa" valve installed on tracks so as to slide up and cover the opening through the agency of a worm screw. The worm screw is operated by means of a rod or key which the operator inserts from the bank of the pool.

Pursuant to the plan for a double date, Smith opened the valve one-half hour early. Within five minutes thereafter, Elgas ordered the valve closed because it was not yet seven o'clock and there were swimmers at the shallow end of the pool. Smith attempted to re-insert the key in the socket above the drain valve but had trouble doing so. Thornburg, who was sitting on the west bank of the pool between the two diving boards, decided to help Smith and dove

toward the drain to help insert the key. He was drawn into the drain where he became inextricably lodged. It should be noted there was a ladder on the north wall near and descending to the drain valve.

Discovering Thornburg's plight, Smith dove into the water three or four times in a vain attempt to dislodge him but had to give up when he developed cramps from his endeavors. Smith then attempted to cut off the pressure at the drain and thus to float Thornburg out in calm water by stuffing towels into the outlet box north of the pool. Other patrons and passersby tied ropes to Thornburg's legs in a vain attempt to pull him from the drain. In the course of time, the Tempe fire department arrived and aided by other official groups drained the pool by suction. About three hours after he had gone into the water, young Thornburg's body was removed from the drain.

This swimming pool was originally built in 1923 and the 18-inch unprotected drain was installed at that time in accordance with the design of the late Dr. R. J. Stroud, a Tempe physician with no engineering training but who had a deep interest in athletics and who supervised the construction of this pool after studying various pools in the valley, reading reference materials and consulting with various skilled and unskilled persons. In 1931 the Tempe Chamber of Commerce was incorporated as a non-profit corporation and shortly thereafter took over the operation of the pool.

In his complaint against the defendants —Charles Smith, the lifeguard; Louis Elgas, the manager of the pool, and the Tempe Chamber of Commerce—plaintiff charged negligence in several particulars. Defendant Charles Smith was never served with process, he being without the jurisdiction, but the other two defendants answered denying the charged negligence and affirmatively asserting the defense of contributory negligence. A directed verdict having been entered in favor of Elgas and no appeal made therefrom then insofar as Elgas is concerned the judgment in his favor is final.

In his appeal here plaintiff asserts error by the trial court in ten specific assignments. The assignments all stem from the action of the trial court in allowing defendant Tempe Chamber of Commerce to make a trial amendment and to bring in and present proof as a defense the rule as announced in our cases of Southern Methodist Hospital, etc. v. Wilson, 45 Ariz. 507, 46 P.2d 118 and Id., 51 Ariz. 424, 77 P.2d 458. The rule is that a charitable corporation is exempt from liability for the torts of their agents providing that the corporation is not otherwise guilty of other active negligence. Plaintiff groups his arguments into two phases. The first presents a question of pleading while the second deals

with the substantive law problem of the applicability of the rule to the facts of this case.

The primary question in this case, however, is: Was there any evidence to enable the jury to find that the defendants or their agents were not negligent? We are unable to determine the manner in which the jury reasoned and arrived at its verdict because no interrogatories were submitted for the jury to answer.

■ There is a well known rule that if there is any theory which is supported by substantial evidence, the judgment of the lower court will not be disturbed on appeal. In re Gary's Estate, 69 Ariz. 228, 211 P.2d 815; Grimm v. Beard, 63 Ariz. 281, 161 P.2d 924.

The plaintiff's theory on appeal is that the lower court erred in allowing the defendant's trial amendment and in receiving evidence on the defense theory that the Chamber of Commerce was a charitable corporation.

In this case the court directed a verdict in favor of Elgas so there can be no question now of negligence on his part. Smith, the lifeguard, was not served with process but he was responsible for opening the drain before closing time and his negligence, therefore, was put in issue.

If the jury found Smith negligent and that defendant was a charitable organization, only then would the rule in the Southern Methodist cases, supra, be applicable and operate to relieve the corporate defendant from liability. However, again assuming Smith negligent, defendant's relief from liability need not depend necessarily upon the determination of its charitable nature for there is another theory upon which the judgment can be upheld, that is, the negligence of Thornburg himself.

■ The evidence showed that Thornburg had been a long-time patron of the pool and it was his custom to assist Smith in draining the pool. He was acquainted with the working of the valve, the iron ladder descending to the drain on the north wall of the pool and the condition of all things connected therewith. In spite of his knowledge of the existing conditions, Thornburg departed from his role as a patron and became a volunteer. There was uncontradicted evidence that he said he was going to help Smith insert the key into the socket of the valve as he dove off the bank into the pool and towards the drain. In view of the facts, the jury may have justifiably concluded Thornburg was guilty of contributory negligence.

There is also the question of active negligence on the part of the defendant resulting from its inaction in allowing the drain to remain in the same unprotected condition over a period of years. We do not know whether the jury found that such a condition amounted to negligence but assuming it did find such, then its verdict in favor of defendant could still be justified because of evidence of Thornburg's own negligence.

404

While we have not treated the pleading question, yet we feel that there was no error in allowing the trial amendment in order to submit the question of the charitable corporation rule to the facts of this case. Assuming, however, that the trial court erred yet it was not prejudicial error. From the evidence adduced at the trial concerning the alleged negligence of defendant's agents and servants there would not have been any necessary liability even by disregarding the rule of the Southern Methodist cases, supra, and applying the ordinary rule of *respondeat superior*. The jury may have found either of the following: (a) there was no negligence on the part of defendant's agents, or, (b) Thornburg was contributorily negligent. The conclusion in either case would be reasonably sustained by the evidence and justify the verdict that was reached by the jury.

When we do not know on what basis the jury reached its verdict, if there is any evidence to support a theory which will sustain same, it must be affirmed on appeal. In re Gary's Estate, supra. In this case, it is not necessary to rely on the doctrine of non-liability of charitable organizations, Southern Methodist Hospital, etc. v. Wilson, supra, because other theories of defense are supported by substantial evidence and justify the affirmance of the judgment.

Judgment affirmed.

UDALL, C. J., and STANFORD, PHELPS and LA PRADE, JJ., concurring.