Al BAUMLER and Shirley Thompson Baumler, his wife, Plaintiffs-Appellees,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.

Al BAUMLER and Shirley Thompson Baumler, his wife, Plaintiffs-Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.

Nos. 72–1467, 72–1486.

United States Court of Appeals, Ninth Circuit.

March 4, 1974.

Leroy W. Hofmann (argued), Kenneth S. Scoville, Phoenix, Ariz., for appellant State Farm Mutual Automobile Insurance Co.

Robert G. Begam (argued), and Jack Levine, of Langerman, Begam & Lewis, Phoenix, Ariz., for appellee Baumler.

Before MERRILL and CHOY, Circuit Judges, and EAST,* District Judge.

CHOY, Circuit Judge:

This diversity case, involving an appeal and cross-appeal by the parties, is the latest of several actions by Shirley Thompson Baumler to recover for personal injuries suffered in a 1959 auto accident. We reverse as to the appeal of State Farm Mutual Automobile Insurance Company and affirm as to the cross-appeal of Baumler.

Baumler was injured while riding in a car driven by Joel Bailleres who was an additional insured on a policy, which provided maximum liability coverage of $10,000 per person, issued by State Farm, the defendant here. In April, 1960 Baumler filed her first action—a suit in Arizona state court against Bailleres. State Farm, obligated by a standard policy clause to defend actions versus its insured, investigated the accident. It learned that Bailleres might have been intoxicated when the accident occurred and that Baumler might have been aware of this, raising the possibility she assumed the risk of her injuries. Evidently, there were two eyewitnesses who could perhaps have substantiated the defense.

The insurer, however, did not further pursue this line of defense. Exactly why is disputed, but it is established that Bailleres was unhelpful in assisting the preparation of his case. First, he

* The Honorable William G. East, Sr., United States District Judge, for the District of Oregon, sitting by designation.

misrepresented to State Farm that he was married to Baumler. Since the policy excluded coverage for claims by the insured's spouse, the misrepresentation allegedly caused State Farm to defer its investigation of the substantive defense. Second, the insurance company experienced repeated difficulties in locating Bailleres. In late April, 1960 he moved from Phoenix, Arizona, his home at the time of the accident, to New Mexico, but he did not notify State Farm of his address change. After a search the company managed to locate him and reminded him of his obligation to keep the insurer apprised of his whereabouts. In June or July, 1961, Bailleres again moved, this time to Houston, Texas. A thorough search of credit, telephone, and official records, however, failed to turn up his address.[1]

As State Farm attempted to locate him, a state court trial on Baumler's claim, expected in May, 1962, was fast approaching. While the insurance policy accorded the insured the right to demand the insurer's defense, it also imposed a duty on the insured to cooperate with the insurer. Burdened, it thought, by a recalcitrant charge, State Farm withdrew from its defense of Bailleres in January, 1962, invoking the noncooperation clause and pointing to his misrepresenting that he was married to Baumler and to his failures to notify the insurer of his address changes. In March, 1962 Baumler obtained a default judgment against Bailleres for $32,658.50.

Baumler then commenced a suit in federal court against State Farm seeking to collect the $10,000 maximum provided in the policy. State Farm defended, *inter alia*, on the ground that Bailleres' noncooperation exculpated it from liability. A provision of the Arizona Financial Responsibility Act—the "omnibus clause," Ariz.Rev.Stat. § 28-1170(F)(1)[2]—provided, as it still does, that, upon the occurrence of an auto accident, the insurer's liability would become "absolute" and that no "violation of the policy" would, at that point, "defeat or void the policy." The district court held that this negated State Farm's noncooperation defense, but only up to the $5,000 limit the Act, on its face, set.[3] State Farm paid the $5,000 judgment in favor of Baumler.

After this decision, the Arizona Supreme Court, in Sandoval v. Chenoweth, 102 Ariz. 241, 428 P.2d 98 (1967), expanded the protection accorded parties injured in automobile accidents. It held that in suits by the *injured* party, the omnibus clause made policy defenses unavailable to the insurer up to the limit of the policy (here $10,000), and not merely up to $5,000, as the federal court had found.

By this time, Baumler had commenced yet a third suit—the present action. But this time she sued as Bailleres' assignee on a claim that the insurer breached its duty to defend him by wrongfully asserting noncooperation. She sought an amount equal to the unpaid damages awarded her on Bailleres' default in her state court action.

Both parties moved for summary judgment with respect to $5,000 of the claim, the remainder up to the policy maximum not previously paid by State Farm. For purposes of this motion only, it was stipulated that Bailleres was guilty of a refusal to cooperate. The

1. State Farm did finally locate him in Houston in February, 1962.

2. That subsection, which was in force in the same form at all times relevant to this litigation, provides:

The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute when injury or damage covered by the motor vehicle liability policy occurs. The policy may not be cancelled or annulled as to such liability by an agreement between the insurance carrier and the insured after the occurrence of the injury or damage, and no statement made by the insured or on his behalf and no violation of the policy shall defeat or void the policy.

3. The district court's decision in that case was affirmed. State Farm Mut. Automobile Ins. Co. v. Thompson, 372 F.2d 256 (9th Cir. 1967).

district court, relying on *Sandoval, supra,* agreed with Baumler that the Financial Responsibility Act negated policy defenses not only against the *injured* party, but also against the *insured* party, at least up to the policy limits. State Farm appeals this ruling.

The issue of noncooperation remained in controversy as to the remainder of Baumler's claim. This issue was tried to a jury which returned a verdict in State Farm's favor. Baumler's motions for a directed verdict and judgment n. o. v. were denied. She cross-appeals these rulings.

*The Motions for Summary Judgment*

■ We think the district court proceeded from an erroneous premise in holding the Financial Responsibility Act does away with policy defenses in suits brought by the insured. In interpreting the Arizona statute, we are, of course, required to follow Arizona law, but neither the Act nor the decisions construing it evince the slightest purpose to extend the statute's protective provisions to the insured. The statute mandates that accidents be properly reported, § 28–1141, requires the provision of post-accident security where insurance coverage is lacking, §§ 28–1142 to 28–1147, provides injured parties with certain means of facilitating enforcement of their claims, §§ 28–1161 to 28–1166, and requires motorists to obtain certain types and amounts of insurance or provide other financial assurance of ability to satisfy demands for compensation. §§ 28–1168 to 28–1178. All of these provisions are clearly designed for the protection of those injured in automobile accidents; none attempts to regulate the relations, *inter se,* of insurer and insured.[4]

The cases construing the Act do not support a different interpretation. Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136 (1963), in upholding the constitutionality of a section of the statute providing for the suspension of driver's licenses for failing to carry adequate insurance, succinctly stated the limited purpose of the Act.

The Financial Responsibility Act has for its principal purpose the protection of the public using the highways from financial hardships which may result from the use of automobiles by financially irresponsible persons.

*Id.* at 280, 380 P.2d at 140. *See also* Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 290, 380 P.2d 145, 147 (1963) (purpose of Act is " 'preventing financial hardship and possible reliance on welfare agencies' "); Geyer v. Reserve Insurance Co., 8 Ariz.App. 464, 467, 447 P.2d 556, 559 (1968) ("Arizona will be nowhere but in the forefront of jurisdictions in making available to automobile accident victims the fullest benefits of insurance coverage.") Sandoval v. Chenoweth, *supra,* expresses the same limited policy. While the court declared that the omnibus clause was a "part" of every motor vehicle liability policy, *id.* at 243, 428 P.2d at 100, the rationale for this was again the need to provide financial assurance for accident victims. The "primary purpose" of the Act is " 'the providing of security against uncompensated damages arising from operation of motor vehicles on our highways.' " *Id.* at 243, 428 P.2d at 100, quoting from Schecter v. Killingsworth, 93 Ariz. at 285, 380 P.2d at 144.

Despite our usual respect for the district judge's knowledge of local law,[5] we are constrained in this instance to re-

4. One other provision of the Act, § 28–1170(H), provides further evidence that the Act was not intended for the benefit of insured parties. It permits the insurer to gain reimbursement, in certain circumstances, from one for whom the insured is forced to pay a claim solely by reason of the Act. In State Farm Mut. Automobile Ins. Co. v. Read Mullan Motor Co., 108 Ariz. 577, 503 P.2d 798 (1972), the court interpreted the section to permit reimbursement only when the insurance policy is certified. A certified policy is one that, following an accident, the insurance carrier certifies as covering the automobile involved in the accident. *Id.* at 578, 503 P.2d at 799.

5. *See, e. g.,* Insurance Co. of North America v. Thompson, 381 F.2d 677, 681 (9th Cir. 1967).

verse his ruling on summary judgment. To do otherwise would mean construing the statute as a sweeping limitation on the contracting authority of insurers and insureds without furthering the statutory objective of protecting the injured.[6] The Arizona courts, the signposts indicate, would reject such a strained interpretation of the Act.[7]

### Baumler's Motions for Directed Verdict and Judgment N.O.V.

■ In the second aspect of the case, the sole issue before the jury was whether Bailleres was guilty of materially breaching the noncooperation clause of the policy. Proof of noncooperation requires establishing at least two elements: (1) that the insured in bad faith refused or neglected to cooperate with the insurer; and (2) that the noncooperation caused substantial prejudice to the insurer's preparation of a defense to a claim lodged against the insured. *Compare* Lindus v. Northern Insurance Co., 103 Ariz. 160, 438 P.2d 311 (1968) *with* Carpenter v. Superior Court, 101 Ariz. 565, 422 P.2d 129 (1966).

■ Baumler, in challenging the jury's verdict, does not dispute that there was sufficient evidence of bad faith noncooperation, but she contends substantial evidence was lacking that either of the two alleged situations involving uncooperativeness—Bailleres' misrepresentations about being married to Baumler and his failure to keep State Farm informed of his address—prejudiced the insurer. In assessing this contention, we need pass only on the sufficiency of evidence of prejudice as to one of the situations: Bailleres' address changes. The jury is presumed to have

acted correctly; thus, where there are two alternative factual theories which might support the verdict, the verdict will be upheld if there is sufficient evidence to support either theory. *See* Siebrand v. Gossnell, 234 F.2d 81, 88–89 (9th Cir. 1956); Bank of America National Trust & Savings Ass'n v. Hayden, 231 F.2d 595, 602–603 (9th Cir. 1956); Thornburg v. Elgas, 71 Ariz. 400, 403, 228 P.2d 448, 450 (1951); *cf.* International Longshoremen's and Warehousemen's Union v. Hawaiian Pineapple Co., 226 F.2d 875, 882 (9th Cir. 1955), cert. denied, 351 U.S. 963, 76 S.Ct. 1026, 100 L.Ed. 1483 (1956). This is especially true where the motion for directed verdict did not distinguish between the theories to be removed from the jury's consideration.

■ Additionally, in judging whether prejudice was shown, we use the standard provided in the district court's instruction to the jury on this point. That instruction required the insurer to prove only that it was probably "less able" to "resist" a claim because of the insured's noncooperative acts. We need not determine whether this is the correct test for "substantial prejudice." Compare Lindus v. Northern Insurance Co., 103 Ariz. 160, 438 P.2d 311 (1968). Baumler submitted the very instruction given by the trial judge, and we think she should be held to it.

■ Given this, there doubtless was substantial evidence[8] that Bailleres' failure to keep State Farm apprised of his address was prejudicial. The state trial was approaching when State Farm withdrew in January, 1962, still unable to locate the person they were to defend. The insurer had made a thorough effort

---

6. Nor does the district court's holding follow from logic. Simply because the insurer is under an obligation to *pay* an injured victim —despite the insured's breach of the policy —does not also mean it has the duty to *defend*. The duty to defend and the duty to pay are, to some degree, independent.

7. Since the parties stipulated to Bailleres' noncooperation for purposes of summary judgment, no remand is necessary.

8. To withstand a motion for directed verdict or judgment n. o. v. on appeal, the jury verdict need only be supported by substantial evidence, defined as that quantum of evidence which might enable a reasonable man to reach the challenged verdict. *See, e. g.,* Standard Oil v. Moore, 251 F.2d 188, 198 (9th Cir. 1957), cert. denied, 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958).

to find him, so that it had no expectation of contacting him before trial. Most importantly, State Farm needed his help in preparing its assumption of risk defense, and, as any trial lawyer knows, information becomes stale as memories dim and witnesses are lost. Thus, the greater in advance of trial information can be obtained, the more useful it is likely to prove. Plainly, the jury would have been justified in finding that this hampered State Farm in its preparation for trial and rendered it "less able" to "resist" Baumler's claim.

As a second ground of attack on the jury verdict, Baumler contends that the admission of a portion of a deposition taken of her prior to the original state action was prejudicial. In the deposition, Baumler described a trip to Mexico she and Bailleres had taken just prior to the accident. In the portion admitted, she stated her belief that she had been married to Bailleres there, or at least he had told her that, but that she could not remember if, in fact, they had been married. The deposition contained one isolated reference to the reason for her memory lapse: that there had been "some drinking" done on the trip. It is this reference which she argues was prejudicial.

We disagree. In order to sustain the defense of noncooperation, the insurer, as part of its proof of prejudice, must demonstrate that it, in *good faith,* was actually hampered in its defense by the noncooperation. *See* Carpenter v. Superior Court, 101 Ariz. 565, 569–571, 422 P.2d 129, 132–134 (1966). As to Bailleres' fictitious marriage to Baumler, that means State Farm had to show it genuinely believed his misrepresentation —that State Farm, in short, was not using the incident as a mere sham. The deposition tended to support the fact that a marriage had occurred and therefore the inference that State Farm actually relied on the misrepresentation. Thus it was relevant evidence, and its probative effect outweighed any speculative negative impact the single reference to drinking might have had.

The denial of Baumler's motions for directed verdict and for judgment n. o. v. are therefore affirmed.

Case No. 72–1467 is Reversed and case No. 72–1486 is Affirmed.