Doris I. SANDBERG, individually and
on behalf of other minority
stockholders, Plaintiff–Appellant,

v.

VIRGINIA BANKSHARES, INC.; First American Bankshares, Inc.; Jack W. Beddow; Milton L. Drewer, Jr.; E. Guy Ridgely; Emanuel A. Baker, Jr.; Harriet F. Bradley; Joel T. Broyhill; Thomas B. Chamberlin; Thomas P. Chisman; Sidney O. Dewberry; Eric W. Erdossy; George W. Johnson; Charles T. Lindsay, Jr.; Donald R. Maxfield;

Linda H. Michael; Milton V. Peterson; Glenn W. Saunders, Jr.; Charles H. Smith, Jr.; Verlin W. Smith; Henry A. Thomas; Stephen G. Yeonas, Defendants–Appellees,

Thomas G. Mays; Dwight C. Schar, Defendants. (Two Cases)

Doris I. SANDBERG, individually and on behalf of other minority stockholders, Plaintiff–Appellee,

v.

Jack W. BEDDOW; Milton L. Drewer, Jr.; E. Guy Ridgely; Emanuel A. Baker, Jr.; Harriet F. Bradley; Joel T. Broyhill; Thomas B. Chamberlin; Thomas P. Chisman; Sidney O. Dewberry; Eric W. Erdossy; George W. Johnson; Charles T. Lindsay, Jr.; Donald R. Maxfield; Linda H. Michael; Milton V. Peterson; Glenn W. Saunders, Jr.; Charles H. Smith, Jr.; Verlin W. Smith; Henry A. Thomas; Stephen G. Yeonas, Defendants–Appellants,

and

Virginia Bankshares, Inc.; First American Bankshares, Inc.; Thomas G. Mays; Dwight C. Schar, Defendants.

Doris I. SANDBERG, individually and on behalf of other minority stockholders, Plaintiff–Appellee,

v.

VIRGINIA BANKSHARES, INC.; First American Bankshares, Inc., Defendants–Appellants,

and

Jack W. Beddow; Milton L. Drewer, Jr.; E. Guy Ridgely; Emanuel A. Baker, Jr.; Harriet F. Bradley; Joel T. Broyhill; Thomas B. Chamberlin; Thomas P. Chisman; Sidney O. Dewberry; Eric W. Erdossy; George W. Johnson; Charles T. Lindsay, Jr.; Donald R. Maxfield; Thomas G. Mays; Linda H. Michael; Milton V. Peterson; Glenn W. Saunders, Jr.; Dwight C. Schar; Charles H. Smith, Jr.; Verlin W. Smith; Henry A. Thomas; Stephen G. Yeonas, Defendants.

Paul H. WEINSTEIN, et al., Plaintiffs–Appellees,

v.

Jack W. BEDDOW; Milton L. Drewer, Jr.; E. Guy Ridgely; Emanuel A. Baker, Jr.; Harriet F. Bradley; Joel T. Broyhill; Thomas B. Chamberlin; Thomas P. Chisman; Sidney O. Dewberry; Eric W. Erdossy; George W. Johnson; Charles T. Lindsay, Jr.; Donald R. Maxfield; Linda H. Michael; Milton V. Peterson; Glenn W. Saunders, Jr.; Charles H. Smith, Jr.; Verlin W. Smith; Henry A. Thomas; Stephen G. Yeonas, Defendants–Appellants,

and

Virginia Bankshares, Inc.; First American Bankshares, Inc., Defendants.

Paul H. WEINSTEIN, et al., Plaintiffs–Appellees,

v.

VIRGINIA BANKSHARES, INC.; First American Bankshares, Inc., Defendants–Appellants,

and

Jack W. Beddow; Milton L. Drewer, Jr.; E. Guy Ridgely; Emanuel A. Baker, Jr.; Harriet F. Bradley; Joel T. Broyhill; Thomas B. Chamberlin; Thomas P. Chisman; Sidney O. Dewberry; Eric W. Erdossy; George W. Johnson; Charles T. Lindsay, Jr.; Donald R. Maxfield; Linda H. Michael; Milton V. Peterson; Glenn W. Saunders, Jr.; Charles H. Smith, Jr.; Verlin W. Smith; Henry A. Thomas; Stephen G. Yeonas, Defendants.

Paul H. WEINSTEIN, et al., Plaintiffs–Appellants,

v.

VIRGINIA BANKSHARES, INC.; First American Bankshares, Inc.; Jack W. Beddow; Milton L. Drewer, Jr.; E. Guy Ridgely; Emanuel A. Baker, Jr.; Har-

riet F. Bradley; Joel T. Broyhill; Thomas B. Chamberlin; Thomas P. Chisman; Sidney O. Dewberry; Eric W. Erdossy; George W. Johnson; Charles T. Lindsay, Jr.; Donald R. Maxfield; Linda H. Michael; Milton V. Peterson; Glenn W. Saunders, Jr.; Charles H. Smith, Jr.; Verlin W. Smith; Henry A. Thomas; Stephen G. Yeonas, Defendants–Appellees (Two Cases).

Nos. 88–2658 to 88–2660, 88–2662 to 88–2664, 89–2903, 89–2904.

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1989.

Decided Dec. 15, 1989.

Md., David G. Leitch, and Albert W. Turnbull, Alexandria, Va., Hogan & Hartson, McLean, Va., on brief) for appellees.

Before HALL, Circuit Judge, GORDON, Senior United States District Judge for the Middle District of North Carolina, sitting by designation, and VOORHEES, United States District Judge for the Western District of North Carolina, sitting by designation.

K.K. HALL, Circuit Judge:

First American Bankshares, Inc. ("FABI"), its wholly-owned subsidiary, Virginia Bankshares, Inc. ("VBI" and, collectively with FABI, "Bankshares"), First American Bank of Virginia ("Bank"), and various directors of the Bank, were defendants below in each of these two cases. In *Sandberg*, they appeal from the judgment entered on a jury verdict for the plaintiff, Doris Sandberg, based on federal securities law violations and state law breach of fiduciary duties. In *Weinstein II*, they appeal from a summary judgment entered on the basis of the *Sandberg* judgment on behalf of sixteen plaintiffs. Sandberg cross-appeals from the denial of her motion for class certification, and the *Weinstein II* plaintiffs cross-appeal from the district court's imposition of a cap on the maximum liability of the individual Bank directors on the state law claims. Both Sandberg and the *Weinstein II* plaintiffs cross-appeal from the denial of attorneys' fees in their respective actions. Finding no error in the trial of the *Sandberg* action, we affirm that judgment; however, we find that the lower court erred in denying class certification, and remand for entry of an appropriate order. In light of our rulings, we remand for reconsideration of the denial of attorneys' fees in *Sandberg*. We find no error in the grant of summary judgment to the *Weinstein II* plaintiffs, in the denial of attorneys' fees or in the imposition of a cap on each director's liability and, accordingly, we affirm.

Lewis Thomas Booker, Richmond, Va. (Thomas J. Cawley and Stephen M. Sayers, Hunton & Williams, Fairfax, Va., on brief), John Sutton Stump (Thomas E. Spahn, Sean F. Murphy, and Robert R. Vieth, McGuire, Woods, Battle & Boothe, McLean, Va., on brief), for appellants.

Joseph Mark Hassett (John C. Keeney, Jr., George H. Mernick, III, Silver Spring,

I. FACTS

These cases arise from FABI's decision to seek a merger of the Bank with VBI

through the purchase by VBI of the 15% of the Bank stock owned by the minority stockholders. Although VBI's ownership of 85% of the Bank's stock was sufficient for approval of the merger, Virginia law required the Bank's directors to issue a proxy statement recommending the plan of merger and to call a stockholders' meeting to vote on the merger. Va.Code Ann. § 13.1–718(B)(1) (1989). The activities of Bankshares and the Bank's directors surrounding this merger, particularly the issuance of the proxy statement, form the basis of the damage actions brought by various minority stockholders.

FABI retained an investment advisor, Keefe, Bruyette and Woods [KBW] to furnish an opinion regarding a "fair price" to pay for the minority-held shares. KBW submitted its opinion that $42 per share was fair. Through arrangements made by Jack Beddow, an officer of both FABI and the Bank, KBW made a presentation to a small group of the Bank's directors and stockholders on January 29, 1987. On the same day, the Bank's executive committee members present at this presentation drafted a two-sentence statement recommending that the board of directors accept FABI's tender offer of $42 per share. At the board meeting held on February 12, 1987, the Bank's directors voted to approve the merger and to recommend to the minority stockholders that they accept the $42 per share offer. No independent investment advisor was retained by the Bank to determine a fair value for the minority-held stock.

A proxy statement was prepared and sent to each stockholder. At the April 21, 1987, stockholders' meeting, the merger proposal garnered 85% of the minority stockholders' votes. On May 27, 1987, the merger was consummated and the minority-held stock was converted to a right to receive $42 per share.

One week prior to the April 21, 1987, stockholders meeting, Paul Weinstein and twelve other minority stockholders filed suit in Virginia state court to enjoin defendants from effecting the proposed merger and to enjoin any merger which did not provide a "fair price per share" to the minority stockholders. (*Weinstein I*). This request was denied. The complaint was then amended to add three plaintiffs and to include a claim for damages against VBI and the Bank's directors for breach of state law fiduciary duties. This amended complaint prayed for an equitable appraisal pursuant to Va.Code Ann. § 13.1–730 (1989). By order dated October 16, 1987, the amended complaint was dismissed, and the *Weinstein I* plaintiffs' appeal of this order to the Supreme Court of Virginia was pending when the *Sandberg* and *Weinstein II* judgments were entered.

## A. *Sandberg*

After the merger, Doris Sandberg, a Bank stockholder who owned 2,442 shares, filed a class action in federal district court claiming violations of federal securities laws and breach of fiduciary duties imposed by state law. Her complaint described the putative plaintiff class as "all former shareholders of [the Bank], excluding defendants" which she alleged to consist of approximately 2,017 persons. Named as defendants were FABI, VBI, and individual directors of the bank. The crux of Sandberg's complaint was that the Bank's proxy solicitation contained material misrepresentations and omitted important facts. More particularly, she alleged that Bankshares orchestrated the entire merger and, abetted by an unquestioning and compliant Bank board of directors, led the minority shareholders to believe that $42 per share was a reasonable price when in fact the stock was worth substantially more.

Class certification was denied and the case proceeded to trial. The jury found that the shares were worth an additional $18 each and awarded Sandberg $43,956 on each claim; judgment was entered upon the verdict for this amount. The judgment is against all defendants, jointly and severally, on Count I (federal securities law); an "alternative" judgment was entered against only the Bank's directors on Count II (state fiduciary duties). Sandberg's motion for attorneys' fees was denied. Each defendant appeals from the judgment, and

Sandberg cross-appeals from the denial of class certification and the denial of attorneys' fees.

### B. *Weinstein II*

In August 1988, Paul Weinstein and sixty-eight other minority stockholders filed suit in the federal district court for the District of Columbia. This action was transferred to the court in which *Sandberg* was pending and the complaint was amended to mirror the *Sandberg* complaint. After the judgment was rendered in *Sandberg*, the *Weinstein II* plaintiffs invoked the doctrine of offensive collateral estoppel and moved for summary judgment. The district court granted the motion and entered judgment for the plaintiffs in an amount calculated on the basis of an additional $18 for each share of Bank stock owned by the plaintiffs at the time of the merger (total: $3,292,236). Pursuant to Va.Code Ann. § 13.1–692.1 (1989), the trial court imposed a cap on the individual liability of each Bank director on the judgment on the state law claim. The defendants appeal from the judgment, and the *Weinstein II* plaintiffs cross-appeal from the imposition of the liability caps as well as from the denial of attorneys' fees. We first address the issues raised by the appeals in *Sandberg*.

### II. CLASS CERTIFICATION

The putative class in *Sandberg* was alleged to consist of all non-defendant stockholders. In a bench ruling, the district court denied Sandberg's motion for class certification on the following grounds: (1) since Sandberg voted against the merger, she was not typical of the class (less than 15% of the minority shareholders voted against the merger); (2) the sixteen plaintiffs in *Weinstein I* could not be members of the class; (3) a conflict of interest existed in that Sandberg's law firm had previously represented one of the defendant directors; and (4) other stockholders had shown little interest in the suit. Bankshares also contends that class certification was properly denied because individual questions predominated over common ones.

Sandberg contends that she was an adequate representative of the class, and that the other prerequisites of certification were met. We hold that the district court erred in denying certification of a class consisting of all minority stockholders. *See generally In re A.H. Robins Co., Inc.*, 880 F.2d 709 (4th Cir.1989) (trend is to give Rule 23 a liberal construction).

■ Fed.R.Civ.P. 23(a)(4) requires that the class representative be capable of fairly and adequately representing the interests of the class. The primary reason given by the district court for its denial of certification was the fact that Sandberg, unlike most of the minority stockholders, voted against the merger and thus obviously did not rely on the alleged material misrepresentations in the proxy statement. As discussed below in Part III, however, her lack of reliance has no bearing on the determination of liability on Sandberg's claims. Inasmuch as reliance is not a factor, it cannot be said that Sandberg's vote against the merger acted to make her interests antagonistic to the other minority stockholders. Indeed, it is difficult to imagine why any stockholder would not immediately embrace Sandberg's representation of their interests and the opportunity to receive more money for his Bank shares. In basing its denial of certification on this ground, the lower court erred as a matter of law.

■ The potential conflict arising out of the prior representation of a defendant-director also implicates the Rule 23 requirement of an adequate representative. Sandberg's law firm had previously represented director Dwight Schar in some personal legal matters, but Schar was voluntarily dismissed soon after the complaint was filed. On appeal, Sandberg asserts that Schar and another defendant director were dropped as parties because neither had attended the two Bank board meetings at which the VBI merger had been discussed and voted upon. Bankshares responds that Sandberg knew of such defenses prior to filing the complaint but dismissed Schar only after realizing the possible conflict. Regardless of the true motivation, the fact

remains that Schar had been dismissed as a party prior to the certification motion and that his non-attendance at the critical board meetings arguably constituted a complete defense to both the federal and state claims. We are unable to see how Sandberg's representation was in any way compromised by this alleged conflict. The lower court's reliance on this basis was an abuse of discretion.

■ The fact that sixteen stockholders were simultaneously pursuing state court remedies also does not constitute an adequate ground for denial of certification. The lower court stated that inclusion of the sixteen "could cause considerable difficulty with them being a part of the class action ... [if they] ultimately could not be members of the class." If this had been the only apparent impediment, the preferable solution would have been to define the *Sandberg* class as consisting of all minority stockholders except the sixteen who were litigating in state court. These sixteen stockholders could then have been placed in a subclass pending resolution of their state court action. We believe that denial of certification was clearly inimical to the purposes for which the class action procedure was intended. Faced with a putative class of approximately 2,000 minority stockholders, it was an abuse of discretion to deny certification on the ground that sixteen members might be eventually barred from relief by *res judicata*.

■ The lower court also based its decision on a lack of interest by other stockholders in the *Sandberg* action. No basis for this finding is given, and we are unable to discern how this lack of interest may have manifested itself. Moreover, even assuming such a lack of interest, we are unable to find legal significance in it. We believe that the court abused its discretion in relying on this factor to deny class certification.

■ Unlike the situation in *Zimmerman v. Bell*, 800 F.2d 386 (4th Cir.1986), there were no individual questions of law or fact to predominate over the common ones. In fact, the only questions presented with regard to the federal law claim were (1) did the proxy statement contain a material misrepresentation or omit a material fact, (2) if so, was the proxy statement an "essential link" in the merger, and (3) if so, what were the damages suffered; the state law claim involved only the question of whether the directors acted in good faith. Only a single proxy statement was involved, and damages were determinable on the basis of the value of a share of stock, so the only individual questions were how many shares of stock each shareholder owned. The defendants' contention that individual questions predominated is without any basis whatsoever. *Pellman v. Cinerama, Inc.*, 89 F.R.D. 386, 389 (S.D.N.Y.1981).

The lower court's denial of certification was based on the clearly erroneous legal conclusion that Sandberg was not a proper class representative because she did not rely on the alleged misrepresentations in the proxy statement. We further find that the lower court abused its discretion in denying certification on the grounds of possible conflict of interest or lack of interest. Finally, we find that the then-pending state court action did not present a sufficient obstacle to certification of a class consisting of all other minority stockholders. Accordingly, the order denying class certification will be reversed and the case remanded for entry of an order certifying a class.

## III. RELIANCE

■ Bankshares and the directors contend that, even assuming that the proxy statement contained material misrepresentations or omitted material facts, only a presumption of reliance by a stockholder plaintiff arises and, in *Sandberg*, this presumption is conclusively rebutted by Sandberg's admitted lack of reliance on such mispresentations or omissions. We hold, however, that reliance is not an element of a § 14(a) action; therefore, the defendants' argument fails.

Section 14(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78n(a) (1981)) makes unlawful the solicitation of a proxy in respect of any registered security in contravention of rules prescribed by the

Securities and Exchange Commission. One such rule, 12 C.F.R. § 335–206, provides as follows:

No solicitation or communication subject to this Subpart B shall be made by means of any statement, form of proxy, notice of meeting, or other communication, written or oral, containing any statement that, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or that omits to state any material fact necessary in order to make the statement therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter that has become false or misleading. Depending upon particular circumstances, the following may be misleading within the meaning of this paragraph: Predictions as to specific future market values, material that directly or indirectly impugns character, integrity, or personal reputation, or directly or indirectly makes charges concerning improper, illegal, or immoral conduct or associations, without factual foundation; failure to so identify a statement, form of proxy, and other soliciting material as to clearly distinguish it from the soliciting material of any other person or persons soliciting for the same meeting or subject matter; claims made prior to a meeting regarding the results of a solicitation.

It is undisputed that this section has given rise to an implied private right of action for damages incurred by aggrieved stockholders. *V.I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). The threshold issue in these appeals is the effect of Sandberg's admitted lack of reliance on the alleged misrepresentations on her right to recover damages.

In *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Supreme Court was confronted with a similar suit by a class of stockholders alleging violations of § 14(a) by means of a false and misleading proxy statement. Stressing the importance of informed voting, but recognizing the impracticality of attempting to determine the extent of reliance by thousands of stockholders on alleged misrepresentations in the proxy statement, the Court held that a finding that the misrepresentations and/or omissions were material sufficed to establish the causal relationship between violation and injury if it is further shown that the proxy statement itself was an essential link in the accomplishment of the transaction for which the proxy was sought.[1] *Id.* at 385, 90 S.Ct. at 622.

More recently, in the context of a case brought for violations of Section 10(b) of the Securities Exchange Act of 1934, the Court held that the presumption of reliance flowing from a finding of materiality is merely a rebuttable presumption. *Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Contrary to the defendants' argument, however, the rebuttable presumption in § 10(b) actions is not applicable to § 14(a) actions. The Court stated that a finding of reliance serves to provide "the requisite causal connection between a defendant's misrepresentations and a plaintiff's injury." *Id.* 108 S.Ct. at 989. However, the Court went on to recognize that causal connection could be demonstrated in other ways such as in *Mills*, in which the material misrepresentations of the proxy statement, coupled with a showing that the proxy statement itself was an essential link in the transaction, sufficed. *Id.; accord Hershfang v. Knotter*, 562 F.Supp. 393, 398 (E.D.Va.1983), *aff'd*, 725 F.2d 675 (4th Cir.1984).

■ *Mills* left open the question of "whether causation could be shown where management controls a sufficient member of shares to approve the transaction without any votes from the minority." *Mills*, 396 U.S. at 385 n. 7, 90 S.Ct. at 622 n. 7. In *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374 (2d Cir.1974), the combined votes of the minority shareholders could not have prevented the proposed merger. The Sec-

---

1. It is conceded that the proxy statement was, under Virginia law, an essential link for accomplishing the merger. Va.Code Ann. § 13.1–718(B)(1) (1989).

ond Circuit, however, pointed to the remedial purpose of the Securities Act in holding that reliance is not a necessary element of causation even in such a situation; to do otherwise "would sanction all manner of fraud and overreaching in the fortuitous circumstance that a controlling shareholder exists." *Id.* at 383, quoting *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1331 (7th Cir.1969). We adopt the reasoning in *Schlick* and hold that reliance, even when the minority's voting strength is insufficient to halt a merger, is not an element of causation in a § 14(a) action. Thus, if the proxy statement contained material misrepresentations and was an essential link in the merger, § 14(a) liability may be established.[2]

## IV. MATERIAL MISREPRESENTATIONS

■ To be actionable, a proxy solicitation must either contain false or misleading statements concerning a material fact or omit a material fact. *Alizac Partners v. Rospatch Corp.*, 712 F.Supp. 599, 604 (W.D.Mich.1989). Materiality is determined under an objective standard which contemplates

> a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*TSC Industries, Inc. v. Northway*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). Bankshares and the Bank's directors dissect each alleged misrepresentation and omission in an attempt to show that the facts implicated by each

were not material. While we appreciate the need to avoid setting too low a threshold of liability in such matters, we are persuaded that at least two of the allegations were sufficiently strong as to require that they be given to the jury to make that "delicate assessment of the inferences a 'reasonable shareholder' would draw" from the facts presented by Sandberg. *Id.*

The proxy statement contained a representation by the Bank's directors that they recommended approval of the merger because it offered the minority stockholders an opportunity to receive a high value for their shares. Sandberg attacked this as a material misrepresentation and alleged that the directors' real reason was a fear of replacement on the board. Va.Code Ann. § 13.1–718(B)(1) requires that the directors state their recommendation to the stockholders, and 12 C.F.R. § 335.212, Item 14(a), requires that the reasons for the merger be set forth. From the evidence at trial, the jury was certainly justified in believing that the directors did not believe a merger at $42 per share was in the minority stockholders' interest but, rather, that they voted as they did for other reasons, *e.g.*, retaining their seats on the board. Indeed, the entire thrust of Sandberg's case was that FABI orchestrated the merger from the outset and that the Bank's directors were considerably less concerned with the stockholders' interest than with their own. For instance, Sandberg adduced evidence that the directors failed to retain an independent investment banker for an opinion on the value of the stock and instead accepted the $42 per share opinion of the firm retained by FABI. We cannot say that the directors' recommendation that the $42 offer was fair to the minority stockholders was, as a matter of law, not a material misrepresentation. *Cf. Denison Mines, Ltd. v. Fibreboard Corp.*, 388 F.Supp. 812, 821 (D.Del.1974) (in

---

**2.** Bankshares' proposed jury charge on "reliance/materiality" read in pertinent part as follows:

> If Plaintiff proves that the alleged misstatements and omissions were made or omitted and that they are material as I have just defined that term, she may satisfy the neces-

sary element of reliance if she proves that the proxy solicitation was an essential link in the accomplishment of the transaction.

We are unable to discern how this language differs from our holding on the reliance question.

recognition of the impact of a reference to an investment advisor's opinion on a substantial number of stockholders, it was held that it was materially misleading as a matter of law to omit the basis for the advisor's opinion).

The proxy statement also stated that FABI had hired KBW "to pass on the fairness of the merger from a financial point of view," although whether KBW's opinion focused on fairness to Bankshares or to the minority stockholders is disputed. It is admitted that KBW relied only on the market price to set a value on the stock, and Sandberg's expert witness was able to show that the actual value was considerably higher (see Part VI, *infra*). Also, the independence of KBW was brought into question. For example, Beddow had opined to KBW that $42 was considered by FABI to be a fair price; coupled with the fee agreement by which KBW would receive $75,000 upon completion of the merger (in addition to the initial $25,000 payment), a substantial incentive to satisfy FABI was clearly present. That KBW's $42 valuation was something less than the product of a completely independent analysis was a question of fact. The representation in the proxy statement that it was such an independent determination could certainly have been found to be a material misrepresentation.[3] We hold, therefore, that it was not error for the court to submit the issue of materiality to the jury.

 Even assuming that some of the alleged misrepresentations were correctly submitted to the jury, the defendants contend that it is reversible error to have submitted any alleged misrepresentations which were not material as a matter of law. Contrary to defendants' argument, however, the submission of both correct and incorrect factual bases supporting a single theory of recovery is not grounds for reversal of a judgment on a general verdict. The cases cited by the defendants to the

contrary involve the submission of both incorrect and correct legal theories of recovery. Compare *Gill v. Rollins Protective Services Co.*, 722 F.2d 55, 59 (4th Cir. 1983) (general verdict set aside when one of two legal theories erroneously submitted to the jury), with *Baumler v. State Farm Mutual Automobile Insurance*, 493 F.2d 130, 134 (9th Cir.1974) (general verdict upheld if sufficient evidence to support one of two factual theories of recovery on a single cause of action). We will not reverse on the ground that some of the allegations may have been immaterial as a matter of law.

 As an alternative ground upon which to uphold the verdict despite the possibly incorrect submission of some alleged material misrepresentations to the jury, Sandberg points to the failure of the defendants to object to the following proposed jury instruction:

The defendants either deny that these [the six alleged misrepresentations/omissions] were not disclosed or say that even if they weren't, they were not material omissions or misrepresentations. In order to establish then the first essential element under her Federal Securities Act claim, Count I, Ms. Sandberg must prove by a preponderance of the evidence first that the defendants made *one or more* of the misrepresentations of the fact as alleged or omitted to state facts which would be necessary to make other statements by the defendants not misleading to the plaintiff.

(Emphasis added.) The defendants' failure to object precludes them from assigning as error the giving of this instruction. Fed.R. Civ.P. 51. The failure to object provides an independent ground to reject defendants' argument. *Ramsey Products Corp. v. Morbark Industries, Inc.*, 823 F.2d 798, 804 (4th Cir.1987).

---

**3.** The other four allegations of material misrepresentations/omissions in the proxy statement were these: (1) failure to disclose that VBI, by virtue of its 85% holdings, had the voting power to elect members of the Bank's board; (2) statement that the recommended price per share was the result of negotiations; (3) failure to disclose financial information, including the value of the Bank's real estate holdings, which would show a value per share in excess of $42; and (4) failure to disclose that Beddow was also an officer of FABI.

## V. STATE LAW CLAIMS

Count II of the *Sandberg* suit was based on alleged violations of Va.Code Ann. § 13.1–690 (1989), which requires each corporate director to act "in accordance with his good faith business judgment of the best interests of the corporation." This statute also permits a director to rely on certain reports, information or opinions which he "believes, in good faith, to be reliable and competent." *Id.* Sandberg's state law claims were based on the directors' alleged failure to make a good faith effort to inform themselves as to the fairness of the merger proposal or to negotiate with Bankshares to obtain a higher price per share of the Bank stock. We reject the directors' argument that the evidence failed to show their lack of good faith.

The directors contend that evidence of "bad faith" was lacking because three directors who testified during the *Sandberg* trial all stated that, in their opinion, the $42 per share price was fair to the minority stockholders. They further contend that their reliance on the investment consultant retained by Bankshares and on the executive committee's recommendation to accept the $42 figure was justified under the statutory standard, as was their decision not to seek a second, independent opinion. These arguments are unavailing. The case against the directors is that they merely rubberstamped everything placed before them by Bankshares. The evidence fully supports a view that the directors exercised no independent judgment whatsoever with regard to the interests of the minority stockholders and consequently, was sufficient to support the jury's finding of lack of good faith.

## VI. DAMAGES

The jury in *Sandberg* awarded her an additional $18 per share over the $42 per share value of her stock resulting from the merger. The judgment in Count I (federal securities law violations) was entered against all defendants jointly and severally. Judgment on Count II (state law breach of fiduciary duty claims) was entered against the directors as an "alternative judgment;" the jury found for the corporate defendants on this count. Bankshares and the directors contend that the damage verdict cannot stand because it was based on impermissibly speculative evidence. Moreover, the directors contend that Sandberg's expert totally disregarded the market price of the Bank stock and that Virginia law governing the stock evaluation under Count II required that evidence on damages give some consideration to market price. The directors further attack the expert's equal valuation of both minority-held and majority-held stock. We turn first to Sandberg's evidence.

The verdict that Sandberg's stock was worth $60 at the time of the merger clearly evinces acceptance by the jury of the testimony of her expert witness. Sandberg's expert testified that he used two methods to evaluate Sandberg's stock. First, the dividend discount method yielded a value based on the company's projected ability to pay future dividends. Second, the stock prices of comparable banking organizations in and near Virginia were analyzed in terms of price/earnings and price/book multiples. Each of these methods yielded a value of approximately $60 per share. Since the market for the shares was very inactive and the market price was inconsistent with that of comparable companies, the expert testified that he was not able to use market value to evaluate the stock. He also explained that the existence of an 85% majority shareholder acted to dampen trading activity due to uncertainty about the majority shareholder's intentions. There is no argument that the expert's opinion was based on anything other than information reasonably relied upon by experts in the particular field, and this is all that Fed.R.Evid. 703 requires.

The directors cite *Lucas v. Pembroke Water Co.*, 205 Va. 84, 135 S.E.2d 147, 150 (1964), for the proposition that Virginia law requires consideration of the market price in any determination of damages measured by the value of stock. *Pembroke Water,* however, involved a statutory procedure by which a court could

appoint appraisers to fix a stock's value. In that case, the state appellate court held that the lower court was required to, and in fact did, consider the four necessary elements to arrive at the "fair value" of the stock: market value, net asset value, investment value, and earning capacity. *Id.* That a court, as the factfinder in an equitable proceeding, is required to consider each element does not mean that a plaintiff seeking to show a stock's value in an action at law must similarly employ each valuation method. In any event, even if the defendants are correct that market value must be considered, the requirement was satisfied. Sandberg's expert did consider the market value but determined that it was not a reliable indicator of the stock's inherent value. *See Atlantic States Const., Inc. v. Beavers,* 169 Ga.App. 584, 314 S.E.2d 245, 249 (1984) ("flexible approach" in determination of fair value adopted for statutory appraisal proceeding). It was not error to deny defendants' motions for directed verdict.

■ The defendants proposed a jury instruction to the effect that the jury could take into account that minority shares ordinarily do not have the same value as shares held by a majority shareholder. As a legal basis for this instruction, the directors cited *Glass v. Glass,* 228 Va. 39, 321 S.E.2d 69, 76 (1984). That the jury was not instructed that the value of a minority interest is often discounted does not in and of itself justify reversal of the *Sandberg* judgment. It is sufficient that the defendants' expert was not prohibited from testifying regarding his finding of a lower value based in part on discounting due to the minority status of Sandberg's stock. The defendants cite to nothing in the record to support a finding that the minority's holdings should be discounted or, if so, how much. In view of this lack of evidence, we think that the lower court properly refused to instruct the jury on discounting the value of minority-held shares.

## VII. OFFENSIVE COLLATERAL ESTOPPEL

■ After entry of the *Sandberg* judgment, the *Weinstein II* plaintiffs moved for summary judgment on the ground that collateral estoppel barred relitigation of the issues decided in *Sandberg.* The lower court granted the motion and entered judgment on the basis of an additional $18 for each share held by the *Weinstein II* plaintiffs. Bankshares contends that the lower court erred, but we disagree and hold that the doctrine of offensive collateral estoppel was properly applied in this case.

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), also arose out of a stockholder action involving an allegedly false and misleading proxy statement. In another action, the Securities and Exchange Commission had obtained a declaratory judgment against the company and its directors that the same proxy statement was materially false and misleading in essentially the same respects as alleged in the shareholders' suit. The shareholder plaintiffs then moved for partial summary judgment on the ground that the company and directors were collaterally estopped from relitigating the same factual issues which had been decided adversely to them in the SEC action. The motion was granted, and the Supreme Court sanctioned this use of offensive collateral estoppel.

In *Parklane Hosiery,* the Supreme Court established as a general rule that offensive collateral estoppel should not be used when the plaintiff invoking the doctrine could easily have joined the defendant in the earlier action or if it would be unfair to the defendant for other reasons. Possible reasons for unfairness might be that the earlier suit was of such small value that it provided little incentive for a vigorous defense, or that the defendant has procedural advantages in the later action that were unavailable in the earlier suit and which might cause a different result. The Court cautioned that its use should be subject to the broad discretion of the district court. *Id.* at 331, 99 S.Ct. at 651–52. We find that this discretion was properly exercised by the lower court. None of these exceptions are presented by the *Sandberg* and *Weinstein II* cases.

It was the defendants who opposed expansion of *Sandberg* by addition of the *Weinstein I* group or of the entire minority shareholder class. Moreover, the stakes were evident from the outset in *Sandberg*, and the defendants do not complain now that they had insufficient incentive to vigorously defend. If the *Sandberg* judgment stands, as we have decided it should, then *Parklane Hosiery* clearly sanctions the summary judgment in *Weinstein II.*

## VIII. LIABILITY CAPS

■ In its *Weinstein II* judgment, the court imposed caps on the liability of each of the defendant Bank directors under the judgment on the state-law claims. This effectively reduced the plaintiffs' "alternative" judgment on the state-law count by $965,682.66.[4] The authority for the imposition of the caps is Va.Code Ann. § 13.1–692.1 (1985) which provides in pertinent part as follows:

> A. In any proceeding brought by or in the right of a corporation or brought by or on behalf of shareholders of the corporation, the damages assessed against an officer or director arising out of a single transaction, occurrence or course of conduct shall not exceed ...
>
> 2. The greater of (i) $100,000 or (ii) the amount of cash compensation received by the officer or director from the corporation during the twelve months immediately preceding the act or omission for which liability was imposed.

Judgment on Count II was limited to $100,-000 against each of eighteen individual directors and to the annual salaries of two others. The plaintiffs contend that the statute under which the caps were imposed deprives them of their constitutional rights to trial by jury, due process, and equal protection.

In *Boyd v. Bulala,* 877 F.2d 1191 (4th Cir.1989), this Court addressed the constitutionality of a Virginia statute which placed a cap on medical malpractice liability. On the basis of the reasoning of the Supreme Court of Virginia's opinion in *Etheridge v. Medical Center Hospitals, Inc.,* 237 Va. 87, 376 S.E.2d 525 (1989), we held that the statutory cap in Va.Code Ann. § 8.01–581.15 (1984) did not violate the plaintiffs' Seventh Amendment right to a trial by jury. We see no basis for distinguishing the malpractice cap from the one applied to the Bank directors' liability on the state cause of action. *See also Franklin v. Mazda Motor Corp.,* 704 F.Supp. 1325 (D.Md.1989) (Seventh Amendment challenge to Maryland malpractice cap rejected). Because they were not raised below, we do not reach the equal protection and due process challenges to the statute. *United States v. One 1971 Mercedes Benz 2-Door Coupe,* 542 F.2d 912, 915 (4th Cir. 1976).

## IX. RES JUDICATA EFFECT OF *WEINSTEIN I*

■ As previously noted, the sixteen *Weinstein I* petitioners sought damages for breach of fiduciary duties in the state courts, and the appeal of the dismissal of their action was pending when the *Weinstein II* judgment was entered. The directors contend that the doctrine of *res judicata* precludes the state law claims in *Weinstein II.* The district court rejected this argument, and we do likewise.

In a letter opinion outlining the basis for the dismissal of the *Weinstein I* complaint, the Virginia Circuit Court judge explained that Va.Code Ann. § 6.1–43 (1989) specifically and clearly exempted holders of bank stock from the statutory appraisal remedy provided for in Va.Code Ann. § 13.1–730 (1989). Rejecting the *Weinstein I* plaintiffs' argument that a common law right of appraisal existed despite the statutory exclusion, the circuit court judge noted that an action at law for damages might nevertheless be available for breach of fiduciary duty or fraud. The judge added, however, that the amended complaint did not allege facts sufficient to support such claims.

---

**4.** The judgment on Count II in *Weinstein II* is $3,292,236, whereas the caps act to limit the total liability on Count II to only $2,346,553.34.

In their brief to this Court, the directors concede that the *Weinstein I* plaintiffs could have transferred their damage claim to the law side of the state court. They contend, however, that the *res judicata* bar arose when the order dismissing their state court action was appealed rather than transferred and, therefore, that the district court erred in denying the defendants' motion for a directed verdict on Count II in *Weinstein II.* An analysis of the Virginia case law on point leads us to a different conclusion.

In *Flora, Flora & Montague, Inc. v. Saunders,* 235 Va. 306, 367 S.E.2d 493 (1988), the Supreme Court of Virginia reiterated its rule against claim-splitting in the context of two cases brought on the chancery side of court involving the same contract. This case is inapposite to the *Weinstein* cases, however. As previously noted, the *Weinstein I* plaintiffs could have transferred their damage action to the law side of the state court. Moreover, it is clear that the § 14(b) action could only have been filed in federal court. 15 U.S.C. § 78aa (1989 Supp.). Thus, we are unconvinced that the consolidation of the federal and state claims in a single federal suit violates the policy against claim-splitting; in fact, such a single filing would appear to promote the policy. We note that the Virginia courts have repeatedly held that Va. Code § 8.01–270 is a remedial statute designed to save costs and prevent delay. *See, e.g., Thomas v. Lauterbach,* 205 Va. 176, 135 S.E.2d 781 (1964). The directors argue that the decision to appeal from the order dismissing the action, rather than moving to transfer the breach of fiduciary claim to the law side of the court, forecloses the sixteen *Weinstein I* plaintiffs from pursuing their state-law claims in the federal action. This strikes us as precisely the sort of technical result that the Virginia courts have sought to prohibit. The directors' *res judicata* argument is rejected.[5]

## X. ATTORNEYS' FEES

In *Sandberg* and *Weinstein II,* the prevailing parties moved for awards of attorneys' fees against FABI and VBI. The lower court in each case denied such fees on the grounds that the benefit of the judgments flowed only to the plaintiffs in each case and not to the corporate defendants. The court acknowledged the deterrent effect of such fees, but concluded that the judgments increasing the price for each minority-held share by $18 acted as an adequate deterrent.

In *Mills v. Electric Auto–Lite Company,* 396 U.S. 375, 390, 90 S.Ct. 616, 624–25, 24 L.Ed.2d 593 (1970), the Supreme Court held that the absence of express statutory authorization is not a bar to a fee award in § 14(a) stockholder actions, and under "special circumstances" such fees should be recoverable. We express no opinion as to whether such "special circumstances" exist in *Sandberg;* however, in view of the transformation of *Sandberg* into a class action, the order denying the motion for an award of attorneys' fees is vacated and the matter remanded for reconsideration. We find no abuse of discretion in the denial of fees in *Weinstein II,* and, accordingly, that order is affirmed.

## XI. SUMMARY

The judgment in *Sandberg* is affirmed and the case is remanded with directions to enter an order certifying a class of all non-defendant minority stockholders except those who were plaintiffs in *Weinstein II.*

---

5. The directors make two additional arguments: (1) Virginia's one-year statute of limitations bars the state law claims in *Sandberg,* and (2) the *Sandberg* verdicts are irreconcilably inconsistent. As to the first argument, Sandberg's state law cause of action accrued on the date of the merger itself, this being the date on which she was injured by the conversion of her stock to a right to receive $42 per share. The merger was consummated on May 27, 1987, and *Sandberg* filed her action on March 14, 1988. As to the second argument, the verdicts arose from claims consisting of different elements, and the exoneration of Bankshares on the state law claims may have been due to the jury's belief that the relationship between Bankshares and the minority stockholders was too tenuous for liability to attach. Neither argument presents grounds for reversal.

The order denying attorneys' fees in *Sandberg* is vacated and remanded for reconsideration in light of the class certification ruling. The judgment in *Weinstein II* is affirmed, as is the order denying attorneys' fees.